IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| ANTHONY MUURIS EL BEY, ex rel ANTHONY MAURICE BUSH, JR. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:13-cv-00325-NKL |
| STATE OF MISSOURI, et al., | ) ) | |
| Defendants. | ) | |

**ORDER**

Before the Court are Defendants' Motions to Dismiss [Doc. 9] and [Doc. 19]. For the following reasons, Defendants' Motions are granted.

**I.    Background**

The following facts are considered true for purpose of the pending Motions to Dismiss. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 589 (2007). El Bey claims to be an Indigenous Moor, a member of the Abannaki Indigenous Nation,[1], and a member and ministerial ambassador of the International Society of Indigenous Sovereigns (ISIS). El Bey has filed multiple official documents recognizing his legal status as a national of the Abannaki Indigenous Nation. [Doc. 4-1 at 2-4]. El Bey alleges these documents and his membership within the Abannaki Indigenous Nation exempt him from following the

---

[1] El Bey does not allege he is a member of the Abenaki tribe of Native American people living in the New England area of the United States and Quebec, Canada, but rather, is a member of an entirely different indigenous nation, the Abannaki Indigenous Moors.

1

laws of the State of Missouri and of the United States.  El Bey claims, he is "only required to follow the International standards."

On March 1, 2013, El Bey was traveling east in a vehicle near the intersection of Truman Road and Van Brunt Boulevard in Kansas City, Missouri, when he was pulled over by Kansas City Police Officer Pritchett.  Pritchett told El Bey that El Bey was stopped because he had "the wrong tags on the car" and requested El Bey's license, registration, and proof of insurance.  El Bey asked Pritchett "what gave him the probable cause to run the tags on the car" and then stated that he was not a resident of Missouri. El Bey handed Pritchett his Aboriginal Republic of North America (ARNA) identification card and stated that he did not need a driver's license to travel.  Pritchett took El Bey's ARNA identification to Pritchett's squad car, returned to El Bey's car, and asked El Bey to step out of the vehicle.  El Bey informed Pritchett that he did not consent to stepping out of the car and Pritchett again asked El Bey to get out of his car, this time remarking that if El Bey refused, Pritchett would "take him out of the car."  As El Bey exited his car, Pritchett placed his hand on El Bey's shirt collar and "yank[ed]" El Bey toward Pritchett.  Pritchett informed El Bey that his ARNA card was fraudulent and that it would not be honored.  El Bey was placed in handcuffs, but Pritchett told El Bey that he was not currently under arrest.  When El Bey's information did not come up in the identification system used by the Kansas City Police Department, Pritchett requested El Bey's Social Security card.  When El Bey refused to give Pritchett his Social Security card, he was placed under arrest.

After his arrest, El Bey requested to speak to Pritchett's sergeant. While Pritchett and El Bey waited for the sergeant to arrive, Pritchett searched El Bey's car without El Bey's consent. After El Bey spoke to the sergeant, El Bey received citations for operating a motor vehicle when his privilege to do so had been revoked, operating a motor vehicle upon a city street without maintaining financial responsibility, and operating a motor vehicle on a street with a license plate not issued to the vehicle. El Bey, while being placed in the squad car after his arrest, requested that the "transporting officer" loosen the handcuffs because "they were very tight on the wrist." The officer refused to loosen the handcuffs. El Bey's car was impounded. At the police station, El Bey was fingerprinted without his consent. El Bey alleges that the stop, arrest, car search, and impoundment were all done without a warrant.

As a result of Pritchett's alleged actions and the alleged actions of the Kansas City Police Department, El Bey seeks the following remedies: $250,000,000 from Pritchett, an injunction barring the State of Missouri, the City of Kansas City, and the Kansas City Police Department from "seizing the vehicles of nonresidents, specifically Indigenous Native Americans with Authenticated Documents" and from "committing illegal searches without warrants from the proper authority," $50,000 each from the State of Missouri, the City of Kansas City, Missouri, and the Kansas City Police Department, and a new car from the State of Missouri. El Bey's Complaint does not seek a specific remedy against Forte or the Kansas City Police Department Board of Commissioners.

## I.     Discussion

Defendant City of Kansas City and Defendants State of Missouri, Kansas City Police Department, Kansas City Board of Police Commissioners, Darryl Forte, and William Pritchett have filed motions to dismiss for failure to state a claim upon which relief may be granted.

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a motion to dismiss, then, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Legal conclusions, naked assertions without factual support, or recitations of the elements of a cause of action are insufficient.  *Id.*  To survive these Motions to Dismiss, El Bey must allege facts that permit a reasonable inference that Defendants, acting under color of any statute, ordinance, regulation, custom, or usage, deprived El Bey of his rights, privileges, or immunities secured by the Constitution and laws. *See* 42 U.S.C.A. § 1983.

> **A. Defendant Pritchett did not deprive El Bey of his rights, privileges, or immunities secured by the Constitution and laws.**
>
> > *1. Constitutional Claims*

El Bey contends his rights under the Fourth, Fifth, and Eighth Amendments were violated when Pritchett searched El Bey's license plates, pulled El Bey over, arrested El Bey, and impounded El Bey's car.

### a. Unreasonable Search and Seizure

El Bey claims that Pritchett violated his Fourth Amendment right to be free from unreasonable searches and seizures by conducting a computerized license plate search of El Bey's license plates without probable cause. Conducting a license plate search is a superficial investigation that has no impact on the rights of the driver. *U.S. v. Sparks*, 37 Fed.Appx. 826, 829 (8th Cir. 2002). No person has a privacy interest in his license plates, and reasonable suspicion, let alone probable cause, is not required to conduct a license plate search. *Id*. Pritchett's computer search of El Bey's license plates did not violate a protected privacy interest, did not require probable cause, and therefore, did not violate the Fourth Amendment.

El Bey also alleges that Pritchett violated the Fourth Amendment by conducting a warrantless traffic stop after learning that El Bey had "the wrong tags on the car" and by asking El Bey to step out of the car without El Bey's consent. A traffic stop based on contemporaneous observation does not require a warrant. *Terry v. Ohio*, 392 U.S. 1, 20 (1968); *U.S. v. Jones*, 269 F.3d 919, 924 (8th Cir. 2001). However, a traffic stop is a seizure under the Fourth Amendment and must be reasonable under the circumstances. *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *U.S. v. Pappas*, 452 F.3d 767, 771 (8th Cir. 2006). A traffic stop is reasonable when it is supported by "an articulable suspicion that criminal activity is afoot." *Jones*, 269 F.3d at 924. A minor traffic

5

violation therefore provides sufficient probable cause for the stop. *U.S. v. Stachowiak*, 521 F.3d 852 (8th Cir. 2008). Further, once there is probable cause for the traffic stop itself, an officer may "conduct an investigation reasonably related to the circumstances which justified the interference in the first place." *Jones*, 269 F.3d at 924. A police officer investigating a lawful traffic stop may request the driver's license and registration and may request that the driver step out of the vehicle. *Id.*

El Bey's Complaint admits he was pulled over by Pritchett "because he violated the law by having the wrong tags on the car." El Bey does not deny that he had the wrong tags on the car. By driving a vehicle with the "wrong tags," El Bey violated Kansas City, Missouri, Code section 70-137 and Missouri Revised Statute section 301.130.5, both requiring the display of a license plate issued to the vehicle to which it is affixed. These violations, determined by Pritchett's computerized search of the license plates, provided sufficient probable cause for the traffic stop. Further, the scope of the traffic stop was not exceeded when Pritchett asked for El Bey's driver's license and registration and asked him to step out of his vehicle.

El Bey further alleges that Pritchett violated the Fourth Amendment when he arrested El Bey without a warrant. An arrest without a warrant does not violate the Fourth Amendment if the arrest is supported by probable cause. *Ulrich v. Pope Cnty.*, 715 F.3d 1054 (8th Cir. 2013). Probable cause exists "'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Id.* (quoting *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2005)). Missouri law allows a police officer to execute a

warrantless arrest where the officer has reasonable grounds to believe that person has violated any law of Missouri, including traffic misdemeanors and infractions. Mo. Ann. Stat. § 544.216 (2013); *State v. Dienstbach*, 313 S.W.3d 201, 206 (Mo. Ct. App. 2010). Based on Pritchett's computer search prior to the traffic stop, Pritchett knew that El Bey was driving with license plates not issued to the vehicle. This violation, alone, was sufficient probable cause to place El Bey under arrest for driving in violation of Kansas City, Missouri, Code section 70-137 and Missouri Revised Statute section 301.130.5. Pritchett also asked El Bey for his driver's license, and El Bey told Pritchett that "he didn't need a driver's license to travel." El Bey does not allege that he ever produced a valid driver's license or a social security card, as requested by Pritchett. Instead, El Bey presented Pritchett with his ARNA identification card, claiming that he was a ministerial ambassador of ISIS, and therefore exempt from Missouri's licensing laws. Pritchett determined that El Bey's ARNA card was fraudulent and arrested El Bey for operating a vehicle without a license, a violation of Missouri Revised Statute section 302.020.1(1). It is self evident that an ARNA card does not authorize a driver to operate a vehicle on a Missouri road and El Bey presents no case law to support this claim.

El Bey also alleges that Pritchett violated his Fourth Amendment rights when Pritchett searched and impounded El Bey's car. Police may impound a vehicle when they have arrested its occupants, even if the vehicle is lawfully parked and poses no public safety hazard. *U.S. v. Petty*, 367 F.3d 1009, 1012 (8th Cir. 2004). Police may inventory the contents of a lawfully impounded vehicle without a warrant or probable cause if the inventory search is conducted according to standardized police procedures.

7

Case 4:13-cv-00325-NKL   Document 28   Filed 09/16/13   Page 7 of 17

*U.S. v. Taylor*, 636 F.3d 461, 464 (8th Cir. 2011). El Bey does not allege that this impoundment was otherwise unlawful, and therefore, Pritchett's post-arrest impoundment of El Bey's vehicle is not a violation of the Fourth Amendment. Pritchett's search of the car without a warrant was an inventory search pursuant to the lawful impoundment of El Bey's car. El Bey has not alleged that this inventory search was inconsistent with the Kansas City Police Department's standard policy, nor has El Bey alleged the absence of a standard policy altogether. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . and allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Therefore, Pritchett did not violate the Fourth Amendment when he searched El Bey's car.

El Bey also claims his Fourth Amendment rights were violated when he was fingerprinted without his consent. However, police may take certain routine administrative steps such as fingerprinting, incident to an arrest. *Maryland v. King*, 133 S.Ct. 1958, 1977 (2013) (citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 58 (1991).

### b. Excessive Force

El Bey claims Pritchett used excessive force, in violation of El Bey's rights under the Fourth and Eighth Amendments, when Pritchett pulled El Bey from his vehicle by his collar and when Pritchett applied handcuffs that were too tight. The right to make an investigatory stop or arrest necessarily requires the right to use some degree of physical coercion in order to carry out the stop or arrest. *Chambers v. Pennycook*, 641 F.3d 898,

906 (8th Cir. 2011). Minor physical contact that is not objectively unreasonable under the circumstances does not constitute excessive force. *Graham v. Connor*, 490 U.S. 386, 396 (1989) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, . . . violates the Fourth Amendment.") (internal quotes omitted). Further, for the application of handcuffs to amount to excessive force, a plaintiff must allege harm beyond a minor injury. *Hanig v.* Lee, 415 F.3d 822, 824 (8th Cir. 2005). Pritchett's conduct, in grabbing El Bey by the collar as El Bey exited the vehicle, given El Bey's initial refusal to follow instructions and his reluctance to exit the vehicle, was not objectively unreasonable. As to El Bey's claim that the handcuffs were too tight, El Bey does not allege any injury, and therefore, Pritchett's application of handcuffs does not amount to excessive force.

### c. Unlawful Government Taking

El Bey claims Pritchett violated his Fifth Amendment right when Pritchett impounded El Bey's car without providing just compensation. The doctrine of eminent domain, providing for just compensation when the government takes private property for public use does not apply to this case. El Bey has failed to state a claim under the Takings Clause of the Fifth Amendment and as stated above in Section II(A)(1)(a), the post-arrest impoundment of El Bey's car was lawful.

## 2. *Statutory Claims*

### a. 8 U.S.C. § 1401(b)

El Bey claims Pritchett violated 8 U.S.C. § 1401(b) when Pritchett impounded El Bey's vehicle after determining El Bey was driving without a driver's license. El Bey

9

claims his status as a Native American or Indigenous Moor exempts him from Missouri's licensing laws. Section 1401(b) provides that the granting of United States citizenship to Indian or aboriginal tribe members shall not impair the right of that person to tribal or other property. El Bey's vehicle was impounded because El Bey failed to display the proper license plates on his vehicle pursuant to Missouri law and drove his vehicle without a driver's license. Even taking El Bey's assertion that he is a Native American or member of the Abannaki Indigenous Nation as true, El Bey is not exempt from following state and local laws when he is within the jurisdiction of the state. *See Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148-49 (1973) ("Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state law otherwise applicable to all citizens of the State."). El Bey has cited no law exempting Native Americans or Indigenous Moors from Missouri's licensing requirements. Therefore, Pritchett did not violate 8 U.S.C. § 1401(b) when he impounded El Bey's car after arresting him for driving without a driver's license.

### b. 18 U.S.C. § 112

El Bey claims Pritchett violated 18 U.S.C. § 112 by threatening and coercing him during the traffic stop. Section 112 provides for criminal penalties against a person who intimidates, coerces, or threatens a foreign official or an official guest. *See* 18 U.S.C.A. § 112(b) ("Whoever willfully intimidates, coerces, threatens . . . a foreign official or an official guest . . . shall be fined under this title or imprisoned not more than six months, or both."). However, Section 112 does not create a private cause of action, and therefore, Plaintiff has not stated a claim under § 112.

10

### c. Missouri's Motor Vehicle Code

El Bey appears to allege that Officer Pritchett violated Missouri Revised Statute section 302.080(2) by failing to accept El Bey's ARNA card as a valid driver's license. Section 302.080(2) provides that a nonresident is not required to have a driver's license issued by the State of Missouri where that person is a nonresident and has in his immediate possession a valid driver's license issued to him in his home state or country. El Bey does not allege that he presented a valid driver's license from "his home state or country" and does not allege that his ARNA card is a driver's license from "his home state or country." Therefore, Pritchett did not violate § 302.080(2) when he arrested El Bey.

El Bey further claims Pritchett violated Missouri's Motor Vehicle Code by requiring El Bey to have a license at all. El Bey does not cite a specific provision of the Missouri Vehicle Code, but instead, just alleges a violation generally. El Bey claims that his status as an Abannaki Indigenous Moor exempts him from Missouri's licensing and registration laws. Even taking El Bey's assertion that he is a Native American or member of the Abannaki Indigenous Nation as true, El Bey is not exempt from following state and local laws when he is within the jurisdiction of the state. *See Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148-49 (1973) ("Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state law otherwise applicable to all citizens of the State."). El Bey was driving in Kansas City, Missouri, within the jurisdiction of Missouri's Motor Vehicle Code, and was therefore required to have a driver's license issued by Missouri or any

other state or country. El Bey does not allege that he was within the boundaries of an Indian reservation when he was pulled over and arrested and does not allege he presented any form of a valid driver's license. Therefore, Pritchett did not violate Missouri's Motor Vehicle Code by arresting El Bey for driving without a driver's license.

3. *Right to Locomotion Claim*

El Bey also claims that his right to locomotion was violated when he was arrested. In support of this assertion, El Bey cites *Thompson v. Smith*, 154 S.E. 579 (Va. 1930), a 1930 decision from the Supreme Court of Appeals of Virginia. El Bey claims that *Thompson*, provides him the absolute right to drive on public highways because it held that "the right of a citizen to travel upon the public highways and to transport his property thereon in the ordinary course of life and business is a common right." *Id.* at 583. However, the Supreme Court of the United States has long held "a state may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles . . . . And to this end it may require the registration of such vehicles and the licensing of their drivers." *Hendrick v. State of Maryland*, 235 U.S. 610, 622 (1915). El Bey has not alleged that Missouri's licensing and registration laws are not uniform, and therefore, Missouri's licensing and registration laws, as applied to El Bey, do not violate El Bey's right to locomotion. Therefore, this claim must fail.

4. *Treaty Claims[2]*

---

[2] The Circuits are divided on whether a treaty violation creates a private right of action under 42 U.S.C. § 1983. *Compare Gandara v. Bennett*, 528 F.3d 823, 826-28 (11th Cir. 2008) *and Cornejo v. County of San Diego*, 504 F.3d 853, 863 (9th Cir. 2007) (holding that Vienna Convention on Consular Rights did not create a private right

12

### a. **Treaty of Watertown of 1776**

El Bey also claims to be a beneficiary of the Treaty of Watertown of 1776, which, El Bey claims, protects aboriginal property from unlawful seizure by American forces. This Treaty, entered into at the dawn of the Revolution and in preparation for a war with the British, was a mutual defense agreement between the United States and the St. John's and Mi'kmaq Indian tribes of Nova Scotia, Canada. *See Treaty of Watertown*, Historical Soc'y of Watertown, 1 (July 19, 1776), http://historicalsocietyofwatertownma.org/HSW/ HSWdocs/treatyofwatertown.pdf [hereinafter Watertown Treaty]; *see also U.S. v. $7,000.00 in U.S. Currency*, 583 F.Supp.2d 725, 731-32 (M.D.N.C. 2008). As to its application to the seizure of property, at most, this Treaty provides for restitution in the event that a citizen of Massachusetts commits robbery against any member of the St. John's or Mi'kmaq Tribes. *See* Watertown Treaty at 1. El Bey does not allege he is a member of either the St. John's or Mi'kmaq Indian tribes of Nova Scotia and "[t]o the extent that the Treaty is still in effect, it does not appear to apply to members of the Ab[an]naki or to citizens of the United States" outside of Massachusetts. *U.S. v. $7,000.00 in U.S. Currency*, 583 F.Supp.2d at 731-32 (addressing a similar claim by a member of the Abannaki Indigenous Moors and remarking, "These arguments are so completely and utterly without merit that they are an affront to this court and to anyone of

---

enforceable through 42 U.S.C. § 1983) *with Jogi v. Voges*, 480 F.3d 822, 835-36 (7th Cir. 2007) (holding that citizen of India had a private cause of action under 42 U.S.C. § 1983 for alleged violations of the Vienna Convention on Consular Relations). While the Eighth Circuit is silent on this matter, for the limited purpose of this Motion to Dismiss, this Court will assume, for the purpose of argument, that a treaty violation could create a private right of action under 42 U.S.C. § 1983.

Native American heritage."). Therefore, El Bey has not stated a claim under the Treaty of Watertown of 1776.

### b. **Vienna Convention on Road Traffic**

El Bey alleges that pursuant to the Vienna Convention on Road Traffic he is not required to have a driver's license when operating a motor vehicle on Missouri roads, because he is a Native American or an Abannaki Indigenous Moor. The United States is a signatory of the United Nations Convention on Road Traffic, and as such, the treaty is part of federal law under Article VI of the United States Constitution. Chapter V, Article 24 of the Convention on Road Traffic provides that signatory countries shall grant reciprocal recognition to driver's licenses issued by the other signatory countries and to international driving permits. *See* United Nations Conference on Road and Motor Transport ch. V, art. 24, March 26, 1952, T.I.A.S. No. 2487; 1952 WL 44658. However, El Bey has not alleged that he possessed a driver's license from any signatory authority or an international driving permit. El Bey only alleges he presented his ARNA card, and he has not alleged that it is a driver's license or international driving permit. Therefore, Pritchett did not violate the Vienna Convention on Road Traffic.

El Bey fails to allege facts that allow this Court to draw a reasonable inference that Defendants deprived El Bey of his rights, privileges, or immunities secured by the Constitution and laws. Therefore, El Bey's claims against Pritchett are dismissed.

### B. **Defendants City of Kansas City, Kansas City Police Department, and Kansas City Police Department Board of Commissioners are not liable for unconstitutional "customs or policies" or negligent training.**

14

1. *Customs and Policies*

El Bey alleges that the "customs and policies" of the City of Kansas City, Kansas City Police Department, and Kansas City Police Department Board of Commissioners are unconstitutional. A municipality may be liable under 42 U.S.C. § 1983 when its official policies or customs either "subject[] a person to a deprivation of rights or cause[] a person to be subjected to such deprivation." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (internal quotes omitted); *Monell vs. Department of Social Services*, 436 U.S. 658, 690 (1978). In order to survive a motion to dismiss, a plaintiff must "identify either an official municipal policy or a widespread custom or practice that caused his injury." *Garrett v. Clarke*, 147 F.3d 745, 747 (8th Cir. 1998) (internal quotes omitted). "A single incident normally does not suffice to prove the existence of a municipal custom." *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999). Here, El Bey has not pointed to a specific official municipal policy or widespread custom implemented by the Defendants which directly caused the alleged violations. Instead, El Bey alleges only one incident in which, as discussed above, no constitutional violations in fact took place. Therefore, this claim must fail.

2. *Negligent Training*

El Bey also alleges that Defendants have failed to train the City's police officers to properly understand international traffic rules and constitutional rights. However, "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of*

15

*Canton*, 489 U.S. at 389. Here, El Bey has not made out a case of "deliberate indifference." Rather, "this was a one-time incident, and there is no evidence of a pattern of constitutional violations making it 'obvious' that additional training or safeguards were necessary." *Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 392 (8th Cir. 2007). For this reason, El Bey has not articulated a claim of negligent training.

### C. Defendants City of Kansas City, Kansas City Police Department, Kansas City Police Department Board of Commissioners, State of Missouri, and Forte are not vicariously liable under the doctrine of *respondeat superior* for alleged rights violations committed by Pritchett.

El Bey also alleges that Defendants are vicariously liable, under the doctrine of *respondeat superior*, for civil rights violations alleged to be committed by Pritchett. A municipality or employer is not liable under § 1983 "*solely* because it employs a tortfeasor – or, in other words, [an employer or] a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original). Similarly, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Rather, a plaintiff must plead that each government official, through his own actions, or each municipality, through its own customs or policies, has violated the Constitution. *Id.* Here, El Bey does not allege that Defendants have violated his rights through their own actions except as to his unconstitutional customs and policies and negligent training claims, which has already been dismissed. Therefore, El Bey's *respondeat superior* claim must fail.

## II. Conclusion

For the reasons set forth above, El Bey's Complaint fails to state a claim upon which relief can be granted. Because the Court finds Plaintiff's claims cannot succeed on the merits, the Court will not address Defendants' affirmative defense and will not address El Bey's responses to those affirmative defenses. Defendants' Motions to Dismiss [Docs. 9 & 19] are GRANTED. All claims are DISMISSED with prejudice.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: September 16, 2013  
Jefferson City, Missouri